**Neil ROLAND, Appellant,**

v.

**Steven d'ARAZIEN.**

**No. 81–1880.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 24, 1982.

Decided Aug. 10, 1982.

---

6. *See* J.A. 108.

7. SOFA art. IX, ¶ 8, set out *supra* note 5.

John Perazich, Washington, D.C., with whom Barry H. Gottfried, Washington, D.C., was on the brief for appellant.

Ann M. Garfinkle, Washington, D.C., for appellee.

Before EDWARDS and BORK, Circuit Judges, and ROBB, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge ROBB.

ROBB, Senior Circuit Judge:

This is an action for slander, tried to a jury in the District Court. The alleged slander was a statement by the defendant that the plaintiff had sexually attacked a young woman, Lita Kirschbrown. The complaint demanded both compensatory and punitive damages and the district judge submitted both these issues to the jury.

The jury awarded the plaintiff $20,000 in compensatory damages but no punitive damages. The district judge set aside this verdict and entered judgment for the defendant. The plaintiff appeals. We affirm the judgment.

The evidence was undisputed with respect to the defendant's defamatory statement and the circumstances under which it was made. In June 1979 the defendant d'Arazien was a legislative assistant in the office of Congressman Andrew McGuire of New Jersey. d'Arazien had been employed there since the fall of 1975, first as a press secretary, later as legislative assistant. On the morning of June 18, 1979 the plaintiff Neil Roland joined Congressman McGuire's staff as a summer intern, to be employed for two and a half months for a stipend of $600.00. d'Arazien and Roland had worked together in 1972 in the presidential campaign of Senator McGovern. A fellow campaign worker was Lita Kirschbrown who later married d'Arazien. When he saw Roland in the McGuire office and identified him as the former McGovern campaign worker, d'Arazien went to Robert Kerr, staff director of the office, and said that his wife had told him she had been "sexually attacked by Neil Roland" when they were working in the McGovern campaign. Mr. Kerr testified for the plaintiff that d'Arazien was "extremely upset", that he "said that he could not work in the same office with Mr. Roland, and that he would have to leave if Mr. Roland was going to work there." (Tr. 115–16) Although d'Arazien did not ask him to fire Roland, Kerr thereafter told Roland that having been informed of what happened in 1972 by his legislative assistant, and without "adjudicating the matter" he had to choose between two employees, and that because a legislative assistant was more valuable to the office than a summer intern, he opted for the legislative assistant and Roland had to leave. (Tr. 62) Accordingly Roland's internship was terminated.[1]

---

1. The evidence concerning the alleged sexual assault was in conflict. Lita Kirschbrown d'Arazien testified that while she and Roland were in the McGovern office in 1972 Roland pressed her "to go out on a date", that when she declined "he kept pressing it and pressing

█ This uncontradicted evidence established that d'Arazien's statement to Kerr was protected by a qualified privilege. Such a qualified or conditional privilege exists when the publisher of a defamatory statement and the person to whom it is made have a common interest, and the communication is of a kind reasonably calculated to protect or further it. PROSSER ON TORTS 789 (4th ed. 1971). The common interest here was in the smooth and efficient operation of Congressman McGuire's office. d'Arazien told Mr. Kerr that his feeling about Roland was so strong, he was so upset, that he could not work in the same office with Roland. Kerr concluded that d'Arazien "was extremely upset and meant precisely that he couldn't work" with Roland. Kerr saw that this was going to create a problem, because in a small office "it is difficult ... to function with people who can't live with each other." (Tr. 118) Thus d'Arazien's feelings, said Kerr, "had an enormous impact potentially on the running of the office." (Tr. 124) d'Arazien's leaving would have cost the office the services of a man described by Kerr as "an excellent legislative assistant who had expertise through having worked on a number of areas for several years." (Tr. 123) In these circumstances it was d'Arazien's duty to tell Kerr that Roland's presence in the office would cause d'Arazien to leave; and it was entirely appropriate for d'Arazien to explain the reason why he would leave. As d'Arazien put it:

> I simply said [to Kerr] that because of this incident, which I had to explain to him, because of the gravity of the situation, that I was physically and mentally unable to continue to function in the office, and I felt I had an obligation to him to tell him that I was in such physical and mental condition that I couldn't stay.

(Tr. 180, 181) In short, on the undisputed evidence, d'Arazien's communication was in furtherance of the interest shared by him and Mr. Kerr, and therefore it enjoyed a qualified privilege.

█ Whether a communication is privileged, where the facts surrounding its publication are undisputed, is a question of law for the court. *Manbeck v. Ostrowski,* 128 U.S.App.D.C. 1, 5 n.20, 384 F.2d 970, 975 n.20 (1967); *cert. denied,* 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968); *Dickins v. International Brotherhood of Teamsters,* 84 U.S.App.D.C. 51, 54 n.2, 171 F.2d 21, 24 n.2 (1948); *Nat'l Disabled Soldiers League v. Haan,* 55 App.D.C. 243, 247, 4 F.2d 436, 440 (1925); *Brice v. Curtis,* 38 App.D.C. 304 (1912); *Alfred A. Altimont, Inc. v. Chatelain,* 374 A.2d 284 (D.C.App.1977); *Ford Motor Credit Co. v. Holland,* 367 A.2d 1311 (D.C.App.1977); *Smith v. District of Columbia,* 399 A.2d 213 (D.C.App.1979).

Although the existence of the privilege in this case was a question of law for the court, whether it was abused by the defendant was a question of fact for the jury. *Nat'l Disabled Soldiers League v. Haan, supra; Brice v. Curtis, supra; Alfred A. Altimont, Inc. v. Chatelain, supra.* Thus when the uncontradicted evidence established that d'Arazien's statement to Kerr was protected by a qualified privilege the burden of proof shifted to the plaintiff; and to sustain that burden the plaintiff was required to demonstrate to the jury that d'Arazien abused and thereby forfeited his privilege by acting with malice, or recklessly or dishonestly. Accordingly we must decide whether there was enough evidence to go to the jury on the issue of abuse of the privilege. We conclude there was not.

it, and then he started putting his hands all over me and tickling me", that when she asked him to leave her alone he "pinned [her] to the desk top table and started pulling at [her] clothes." (Tr. 187–88) She said that she screamed, became hysterical, left the office, went home and was afraid to return. She said Roland's "handling" left bruises on her arms. She was 19 years old at the time. Roland on the other hand testified that there had been no sexual assault. He said that what happened was only "horse play", "hand slapping and pushing" and a "little tickling", all in the presence of another man. (Tr. 48) He conceded however that Miss Kirschbrown had screamed and run from the room, (Tr. 49) and that immediately after the incident occurred he was asked to leave the campaign headquarters and thereafter was fired. (Tr. 53–55)

**656**

Having read the record with care we can find no evidence to support a jury finding that d'Arazien abused the qualified privilege. Specifically, there is nothing to justify a finding that when he spoke to Kerr d'Arazien was motivated by personal malice, or ill will, or was dishonest or reckless. Mr. Kerr, a witness for the plaintiff, testified that d'Arazien was obviously deeply troubled, and there is no suggestion that Kerr at any time questioned d'Arazien's sincerity. Although the plaintiff argued that d'Arazien should not have accepted his wife's account of Roland's conduct, we think d'Arazien could not be faulted on this score. In the circumstances he was entitled to believe what his wife said. His reasonable belief was reinforced by the uncontradicted evidence that Roland's conduct, whatever it was, had caused Lita Kirschbrown to suffer nervous and emotional trauma which still persisted. In the light of these circumstances a finding of malice or improper motive on the part of d'Arazien must rest on speculation and surmise, completely unsupported by evidence, and it cannot stand.

The judgment of the District Court was right. It is

*Affirmed.*